Our final case of the day is United States v. Overton. Mr. Goodwin. Good morning. May it please the court. I'm Michael Goodwin. I represent Aaron Overton. Mr. Overton's case today presents this court with a warrantless traffic stop and subsequent search of his vehicle by a dog sniff, both exterior and interior, resulting in finding of a gun. I would submit to this court that the district court erred in holding that there were no material factual disputes that warranted an evidentiary hearing. I think this would be the easiest ground for this court to reverse the court below. The law here is that a defendant seeking an evidentiary hearing on a motion to suppress need only provide sufficient information to enable a court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion, here the suppression motion. And here Mr. Overton and the government through an arrest narrative by the arresting officer at the scene and subsequently a declaration from an officer who had the dog presented disparate facts, disputed facts that required an evidentiary hearing. What are the top one or two? I would say the top one would be, well, there are a couple of them together. There would be the facts that was the traffic stop warranted. Mr. Overton says that there was no legal justification for the traffic stop. He claims he traveled at a slow speed, stopped the vehicle, followed the law. The officer, at least Officer O'Neill claims that Mr. Overton drove erratically, crossed the center line, failed to stop on I think a couple of occasion, or failed to signal for a turn on a couple of occasions. And that he terms it a low speed pursuit. So there's a terminology difference as well. Secondly, I would suggest that there is a factual dispute over whether the traffic stop was delayed to allow the canine to come and sniff first the outside of the vehicle and then the inside. The government argues that it was not a delay. We think that the stop was prolonged. Was there any factual dispute about whether your client pulled over when instructed? He contends that he was. He contends that there was no legal justification for the stop. No. Please answer the question I asked. Yes, Your Honor. Was there any factual dispute about whether your client pulled over when instructed to? You're saying he shouldn't have been told to pull over. Is there a factual dispute about whether he pulled over? Because that is what led to the custodial arrest. There is no dispute over whether he pulled over. In his motion, and that's unfortunately the limited statements that we have from the defendant, in the motion he indicates that there was no legal justification for the stop. Well, the rule of law is that if the police stop you, you must stop. You can't flee. Right? So even if there was no justification for the attempted stop, there was a violation. Undisputed. I believe that Mr. Overton's position is that he did stop. This was what the officer turned to. Sure. The question is without delay. We know he stopped. Right. I don't know if we know the answer to that question. I think that would be settled in an evidentiary hearing. Look, the reason we're pursuing this is because I asked whether there was a dispute on that point, and you ultimately said no. Now it sounds like you're saying yes. What put this matter into dispute about whether he promptly complied with the directive to stop? How did he put that into dispute? Through his motion. And what in the motion says I immediately complied with the order to stop? It does not state that. It doesn't say that. It does not state that. Beyond the delay for the dog to search the vehicle, there's also whether the dog, the canine, alerted on the exterior of the vehicle. There's even dispute between the two officers. In Officer O'Neill's arrest narrative that he prepared just after the stop here, he indicates that the dog alerted two times, and both of those alerts were on the interior of the vehicle. Subsequent to the motion to suppress, Sergeant Leverett prepared a declaration, and that declaration, he contends, now there are three times that this canine alerted. Or the two that were interior, on the console and also on the cell phone. And then Sergeant Leverett says there was another time before that, and that was in the exterior of the vehicle on the passenger side door. And the court found that that was what created the probable cause for the search of the interior of the car. So we think that's a factual dispute. I'm sorry, Mr. Goodwin. Help me with this on Mr. Overton's position. So after he's pulled over, he doesn't have a valid driver's license, right? He does have a permit, Your Honor. Well, he ain't driving the car away with that, is he? They're going to take that car to the pound, or to the station house, no matter what. Well, according to the… They're not going to let him get in and drive away. They may not. Right. You mean a permit like you can drive when you're accompanied by a licensed driver? Yes, Your Honor. Okay, right. So he's not going to be able to get in the car and drive home after they deal with the traffic ticket or whatever he thought was going to happen? I will only say I've seen numerous occasions where it has occurred, but if we say… Without a license? Where the officer has them pull over the car to the side or… And more particularly, the government suggests that, oh, it's inevitable. We would have searched this vehicle. Yeah, that's the point I'm trying to get at. I think it's inconceivable they're going to say, well, you don't have a driver's license, but it's fine. Go ahead and drive home. I think that there are a couple of things in the local police department's policies that indicate a preference for not towing and impounding a vehicle when it's stopped for a traffic stop. It would say to… Including fleeing from the police? After he fails to pull over, I don't see how a custodial arrest was anything other than inevitable. Do you have some local policy that says we don't arrest people who refuse to stop? I'm sorry, Your Honor. No, the local policy would be that the police department does not… Yeah, there are two things that would lead to a custodial arrest. One is the failure to stop, and one is the lack of a driver's license. The lack of a driver's license was found after the vehicle stopped, but by then, it seems to me, it was already inevitable that there would be an arrest. I think the inevitability of the arrest, if we put that aside, there still is an inevitable that they would search the vehicle. We can't put that aside because your whole argument is that it took too long for the dog to arrive for a simple traffic stop. But, of course, this wasn't a simple traffic stop. Well, if you believe Mr. Overton in that there wasn't justification for the stop, which… No, look, we've already gone by that. If the police tell you to pull over, you must pull over. You can't just go away and say, well, I deny the authority of the police to stop me. It's still fleeing from a police officer, and that's still a separate offense. I certainly understand and concur with Your Honor. And my difference, I don't mean to be petty about it, but I think Mr. Overton's position was that he did stop, and that would be litigated at the eventuality. He probably stopped when they told him to pull over. You've already told me that there's no such assertion in his motion to suppress. And in response to my initial question, you said you conceded that he didn't pull over promptly. You would have to read any such assertion from his assertion that there was not a justification for the traffic stop, Your Honor. He didn't use a specific language number. These are separate things. The problem you have is Officer O'Neill's declaration vis-a-vis the absence of an assertion of fact to join issue with what Officer O'Neill has stated. That's another way of saying what Judge Easterbrook is observing. In other words, Officer O'Neill, whether we like it or not, he said, Overton continued driving when, after I hit the emergency lights to initiate the stop. That's the fleeing that Judge Easterbrook's referring to. Then he had to hit his siren. And then eventually, he pulls over. I would—I feel like— No, that's all right. Go ahead. But all I can say is that in the motion, Mr. Overton says there wasn't justification for the stop. He didn't— That's a completely different question from whether he did stop. If he had put in his motion a statement, I stopped immediately when the police turned on their lights, you would have needed an evidentiary hearing. But it ain't there. I understand, Your Honor. Okay. Thank you very much. Mr. Wright. May it please the Court. Brian Wright for the United States. There is no material evidentiary dispute on two key points that preclude Mr. Overton's claim. First, that Mr. Overton did not stop immediately. Therefore, he committed resisting arrest. That gave the police probable cause to arrest him and obviated the Rodriguez requirements. And Mr. Overton, as I think he admitted today, did not dispute that fact. Second, there's no dispute that because of the resisting arrest and the lack of a license, Mr. Overton was not going to be able to drive away. And law enforcement was going to impound the vehicle, which means the gun would have been found inevitably based on an inventory search. Based upon that second point, is Rodriguez even implicated here? No. No, we don't think Rodriguez is implicated either way because the existence of probable cause both to arrest Mr. Overton and then search the vehicle means there's really no potential Rodriguez problem even. I mean, the cars go into the station house, it seems to me. Yes. Or the auto pounder, wherever they take them. Yes, the only evidence in the record indicates that's true, and I think logic indicates that that would be true as well. The vehicle could not be driven by Mr. Overton. Mr. Overton was going to be arrested, and the vehicle was obstructing traffic. That's, I mean, invariably going to be impounded, I think. No further questions, we'd ask the Court to affirm. Thank you. Thank you very much. The case is taken under advisement, and the Court will be in recess.